**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| **STORMSEAL USA, LLC and** | § | |
| **SYSTEM STORMSEAL PTY LTD,** | § | |
| **Plaintiffs,** | § | **CIVIL ACTION NO. 2:23-cv--391** |
| | § | |
| | § | **JURY TRIAL DEMANDED** |
| **v.** | § | |
| | § | |
| **SRS DISTRIBUTION INC.,** | § | |
| **Defendant.** | § | |
| | § | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiffs System Stormseal Pty Ltd. and  Stormseal USA, LLC (collectively "Stormseal" or "Plaintiffs") by and through their attorneys, file this Complaint for Patent Infringement against SRS Distribution Inc. ("SRS Distribution" or "Defendant") and allege:

## NATURE OF THE ACTION

1.      This is a civil action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. §§ 1, et seq., including §§ 271, 281, and 285.  Stormseal developed a temporary roofing system that weather-proofs homes and other structures that have suffered storm damage. The system involves a heat-shrinkable film that conforms to the shape of the roof, sealing out moisture and protecting the structure until permanent repairs can be made. Stormseal's temporary roofing system is so robust that it allows people living in storm-damaged structures to remain in their homes until time and money permit repairs. System Stormseal Pty Ltd. Owns patents directed to the system and, as relevant in this case, to the method for installing it on structures.

2.      Stormseal's system was developed in 2008 after a severe hailstorm caused hundreds of millions of dollars in damage to homes and businesses in Sydney, Australia.  The existing solution at the time, which involved trying to secure loose-fitting tarpaulins over

damaged portions of a structure could not handle the wet and windy conditions that followed the storm.  For this reason, Stormseal's founders developed the heat-shrinkable roofing system that became Stormseal.  Since then, Stormseal's roofing system has made its way around the globe, helping secure thousands of buildings and gaining praise throughout the industry.   After Hurricane Ida devastated Louisiana in 2021, for example, the U.S. Army Corps of Engineers selected Stormseal's roofing solution for use in a pilot program to help vulnerable populations waterproof their homes until they could be repaired.

3.      However, such great success resulted in numerous  imitators.  The defendant in this lawsuit, SRS Distribution, installs and trains others to install heat-shrinkable roofing systems in a manner that infringes Stormseal's patent rights. SRS Distribution also sells heat-shrinkable film specially designed for that purpose, often alongside accessories needed to use Stormseal's patented installation method.  Stormseal has tried to resolve this issue with SRS Distribution informally through early communications and cease-and-desist letters, but SRS Distribution has refused to stop its on-going willful infringement. Accordingly, this action seeks the Court's intervention to halt further infringement of Stormseal's patent rights and to obtain damages for Stormseal on account of the infringement by SRS.

## THE PARTIES

4.      Plaintiff System Stormseal Pty Ltd. is a company organized under the laws of Australia.  It is the owner of U.S. Patent No. 11,168,484 (the "'484 Patent"), the asserted patent in this case. This Complaint refers to Plaintiffs System Stormseal Pty Ltd. and Stormseal USA, LLC, collectively, as "Stormseal."

5.      Plaintiff Stormseal USA, LLC is a company organized under the laws of the State of Florida.  It operates a business in the United States supplying Stormseal film and equipment and training others to install the Stormseal roofing system using the methods claimed in the '484

Patent.  Stormseal USA, LLC is an exclusive licensee of the '484 Patent and has the exclusive right to use the methods claimed in the '484 Patent.  Stormseal USA's business address is 2161 Palm Beach Lakes Boulevard, Suite 304, West Palm Beach, Florida 33409.

6.    Defendant SRS Distribution Inc. ("SRS Distribution") is a company organized under the laws of the State of Delaware with headquarters located at 7440 State Highway 121, McKinney, Texas 75070.

## JURISDICTION AND VENUE

7.    Plaintiffs' claim for patent infringement arises under the patent laws of the United States, including specifically 35 U.S.C. §§ 271 and 281. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338.

8.    This Court has personal jurisdiction over SRS Distribution because its headquarters are located in this district and because it has committed tortious acts in this district. SRS Distribution has numerous retail stores in this district through which it sells or offers for sale the StormGear product (described in more detail below) that can be used to infringe the '484 Patent.  Moreover, upon information and belief, SRS Distribution has held trainings at its physical locations in Texas at which contractors or installers are instructed in methods of installation that infringe the '484 Patent.

9.    SRS Distribution has also engaged in extensive marketing and training of installers in the use of the StormGear product to infringe the claims of the '484 Patent. For example, on SRS Distribution's YouTube channel, a "StormGear™ Roof Shield by TopShield" video indicates that a "STEP BY STEP VIDEO TRAINING SERIES [is] NOW AVAILABLE":



Source: https://www.youtube.com/watch?v=JdhX1M6CbBo

10.     Upon information and belief, SRS Distribution also sells at its retail locations in this district heat shrinkable film and other products (such as battens) that are specially adapted or packaged together for use in the claimed method.

11.     Venue is proper in the Eastern District of Texas pursuant to 28 U.S.C. 1400(b) because SRS Distribution has committed acts of infringement in this district and, also, has a regular and established place of business in this district.  Specifically, in addition to its headquarters being located in this district, SRS Distribution has numerous physical stores in this district that it uses to distribute StormGear products and conduct training in methods that infringe the '484 Patent.

## BACKGROUND FACTS

### Plaintiffs' Stormseal Product

12.     In 2008, following a devastating and damaging storm in Australia, Stormseal's founder, Matthew Lennox, along with his co-inventors, developed an innovative and ultimately extremely successful temporary roofing solution for protecting damaged buildings from the elements while they awaited repairs, the resolution of insurance claims, or other delays.

13.     When roofs are damaged by storms or other disasters, they need to be waterproofed until permanent repairs can be made. Particularly in storm-damaged areas where many homes may be similarly damaged, the need for other clean-up efforts, the unavailability of contractors and crews to do the work, or the lack of resources pending insurance payments may prevent immediate permanent repairs.

14.     For many years, the solution was to place water-resistant tarps over damaged portions of the roof, securing them with sandbags, nails, screws, or tape. But tarps are often ineffective, particularly when poorly installed, and need to be fixed or replaced frequently. High winds, which are frequent in areas ravaged by storms, can also blow tarps off or cause them to move.

15.     Stormseal's solution to this problem—the first of its kind—involved preparing a sturdy shrink-wrap film that would cover the surface of the roof, affixing the sheet to the roof by wrapping the ends of the film around battens, and using heat to shrink the film so that it conforms to the shape of the roof. The result is a waterproof, secure, temporary roof that can be in place for months if necessary without further maintenance.

16.     In 2016, the Australian government, recognizing Stormseal's innovation and potential in markets beyond Australia, gave Stormseal a grant of $450,000 to pursue commercialization of Stormseal in other markets.  By April 2018, Stormseal had a training center up and running in the United States to certify contractors to install the product on homes in this country.

17.     Stormseal, the name under which Plaintiffs sell their products and services, has been successful in the U.S. and elsewhere.  Since 2008, Stormseal has signed up 712 authorized installers of the product worldwide, 309 of whom are in the United States (all of whom have

been certified since Stormseal opened its first U.S. training center in 2018.  Stormseal's contractor network has completed thousands of installations throughout the United States, weatherproofing homes and businesses using Stormseal's patented method.

18.    Stormseal's success results in large part from the fact that its patented installation method allows for a secure, watertight temporary roof that lasts far longer than traditional temporary coverings like tarps.  For example, FEMA's storm relief program managed by the U.S. Army Corps of Engineers ("USACE"), called "Operation Blue Roof," reviewed Stormseal following Hurricane Michael in October 2018.  Since then, Stormseal has trained principal contractors working directly for FEMA and USACE.  More recently, Stormseal participated in the FEMA/USACE Shrink Wrap Pilot Project in New Orleans following Hurricane Ida.

19.    When the homes wrapped using Stormseal after Hurricane Ida were inspected following spring storms several months later, the temporary roofs had held up and were undamaged.

20.    Similarly, in 2020, Stormseal was used to wrap the roofs of an entire Florida condo community until the community association could raise sufficient funds to replace or repair damaged roofing.  Even after sustaining heavy rains from Hurricane Eta, the wrapped roofs remained watertight, preserving the insides of the community buildings and keeping them free from water damage.

21.    On November 9, 2021, the U.S. Patent Office duly and legally issued U.S. Patent No. 11,168,484 (the '484 Patent), entitled "Roof and Wall Cover System," to Plaintiff System Stormseal Pty. Ltd. A true and correct copy of the '484 Patent and a subsequent Certificate of Correction to make minor wording fixes are attached hereto as Exhibit A.

22.    Plaintiff System Stormseal Pty. Ltd. is the owner by assignment of all rights, title,

and interest in the '484 Patent.

23.    Plaintiff Stormseal USA is the exclusive licensee of the '484 Patent.

24.    The '484 Patent is directed to a method for installing Stormseal's innovative temporary roofing system.

25.    Claim 1 of the '484 Patent recites a method for covering a roof with a shrinkable film that involves applying a sheet of film to the roof, affixing it to the structure with battens, and heating the sheet so that it shrinks to conform to the roof:

> 1.    A method of providing covers over at least a portion of a roof of a storm damaged built structure comprising the steps of:
> applying a sheet of heat shrinkable film over the portion of the roof, the sheet having a leading edge and a trailing edge and being a film of low density polyethylene including shrinking resins;
> wrapping portions of the leading edge around a first batten and attaching the first batten to an underside of a first eave or to a facia of the built structure;
> wrapping portions of the trailing edge around a second batten and attaching the second batten to an underside of a second eave or to the facia of the built structure at a location different than the first batten; and
> heating the sheet of heat shrinkable film to bring the film into conformity with the portion of the roof, wherein said heating step shrinks the sheet of film tight against the built structure to cover over the portion of the roof.

26.    Claim 2 of the '484 Patent, is similar to Claim 1, but recites a step of cutting the film from a roll of heat shrinkable film and applying it over a portion of the roof:

> 2. A method of covering at least a portion of a roof of a built structure comprising the steps of:
> cutting a sheet of film from a roll of heat shrinkable film;
> after said cutting step, applying the sheet of film over the portion of the roof to extend from a first edge to a second edge of the built structure, wherein the film includes a leading edge and a trailing edge;
> wrapping portions of the leading edge around a first batten and attaching the first batten to an underside of a first eave or to a facia of the built structure;
> wrapping portions of the trailing edge around a second batten and attaching the second batten to an underside of a second eave or to the facia of the built structure at a location different than the first batten; and

heating the film to cause the film to conform to the portion of the roof.[1]

27.    The method claims in the '484 Patent are used in the United States by Plaintiff Stormseal USA and authorized installers of Stormseal's temporary roofing system.

**Infringement by SRS Distribution**

28.    SRS Distribution currently has more than 700 locations around the country, including in this district.

29.    SRS Distribution has a brand of residential roofing products called "TopShield."

30.    Within its TopShield brand of products, SRS Distribution sells and installs a temporary roof system called "StormGear."

31.    StormGear competes directly with Stormseal's temporary roofing system.  Like Stormseal, StormGear is a heat-shrinkable film that is applied to a roof, secured, and heated to conform to the roof.

32.    When installing StormGear, SRS Distribution and/or contractors that SRS Distribution has trained or instructed on how to install StormGear infringe claims 1, 2, and 3 of the '484 Patent.

33.    StormGear, like Stormseal, is a heat-shrinkable film that comes in large rolls approximately 90 feet long.  In particular, SRS Distribution's training videos indicate that rolls of StormGear measure 32 feet by 90 feet.

---

[1] As originally issued, claims 2 and 3 of the '484 Patent had references to both "the structure" and "the built structure." On April 12, 2022, the Patent Office issued a certificate of correction that changed references to "the structure" to "the built structure." The above-quoted claim 2 is the claim's language as corrected.



Source: https://www.youtube.com/watch?v=rXAh3nvXed4 (at 1:06 of 1:21)



Source: https://www.youtube.com/watch?v=rXAh3nvXed4 (at 1:12 of 1:21)
(Last Accessed July 27, 2023)

34.    Upon information and belief, StormGear is a film of low density polyethylene

that includes shrinking resins.

35.    The "ITEM CODE" for a StormGear roll listed on SRS Distribution's website is "TOP12MILLLDPE329."

| Product: | Item Code: | Size: |
|---|---|---|
| StormGear Roof Shield Roll | TOP12MILLLDPE329 | 32' x 90' |

Source:
https://www.topshieldproducts.com/en/productlines/stormgear/roof-shield--accessories/roof-shield/ (Last Accessed July 27, 2023)

In this item code, the "TOP" is believed to correspond to SRS Distribution's TopShield brand. The "12MILL" is believed to correspond to a thickness of 12 millimeters—a thickness SRS Distribution advertises for StormGear.  Lastly, "LDPE" is believed to refer to low density polyethylene.

36.    When performing its installations, SRS Distribution and/or contractors that SRS Distribution has trained cut the film before applying it over the portion of the roof to be covered.

37.    This cutting step takes place either on the ground before carrying the film onto the roof or on the roof after the film has been rolled out.



Source: https://www.youtube.com/watch?v=XxGy57Pwo-A (at 0:43 of 1:19).

38.    After cutting the film, SRS Distribution and/or contractors that SRS Distribution has trained apply the film to the surface of the roof. It does this, for example, by having workers extend the film over the portion of the roof it is covering.

39.    When SRS Distribution applies the film to the roof, it extends from a first edge to a second edge of the structure, such as from the end of the roof on one side of a house to the end of the roof on the other side of the house.



Source: https://www.youtube.com/watch?v=XxGy57Pwo-A (at 0:43 of 1:19).

40.     To secure the film to the roof, SRS Distribution uses battens, which it calls "furring strips."



Source: https://www.youtube.com/watch?v=XxGy57Pwo-A (at 1:13 of 1:19).

41.    The edges of the film are wrapped around the furring strip, and the furring strip is attached to the eaves or facia of the structure being wrapped, typically using nails or screws.



Source: https://www.youtube.com/watch?v=dZ4-qPPLN5k (at 1:29 of 3:35).



Source: https://www.youtube.com/watch?v=dZ4-qPPLN5k (at 2:02 of 3:35).

42.    SRS Distribution uses furring strips at both the leading and trailing edge of the film.



Source: https://www.youtube.com/watch?v=dZ4-qPPLN5k (at 2:21 of 3:35).

43.    SRS Distribution then heats the film so that it will shrink and conform to the shape of the portion of the roof to be wrapped.



Source: https://www.youtube.com/watch?v=Prpy3bnF0Fw  (at 0:02 of 2:06).

44.     In carrying out the process described in the preceding paragraphs, SRS Distribution commits direct infringement of claims 1, 2, and 3 of the '484 Patent.

45.     In addition to direct infringement, SRS Distribution has also induced and continues to induce infringement of the '484 Patent by specifically training and instructing others to install StormGear in a manner that infringes the '484 Patent.  As a non-limiting example, SRS Distribution provides a "STEP BY STEP VIDEO TRAINING SERIES" on how to install StormGear.



Source: https://www.youtube.com/watch?v=JdhX1M6CbBo (at 4:20 of 4:29)

These videos are available for download from SRS's Distribution's website and/or streaming, for example, on YouTube.

46.    SRS Distribution sells the StormGear film and accessories associated with installation (e.g., furring strips) through its 700 locations.

47.    SRS Distribution is aware of the '484 Patent and specifically intends that its training and installation instructions will induce infringement by installers of StormGear.

48.    SRS Distribution has been aware of the '484 Patent since no later than February of 2023, when Plaintiffs communicated via email and phone with SRS Distribution concerning the '484 Patent and corresponding infringement.  SRS Distribution was further aware of the '484 Patent following a June 8, 2023 letter from Plaintiffs' outside counsel requesting that SRS Distribution cease and desist from its infringement of the '484 Patent.

49.    Moreover, upon information and belief, SRS Distribution was aware of the '484 Patent before communication from Plaintiffs in February of 2023.  Upon information and belief, SRS Distribution was informed by its affiliates of an ongoing lawsuit in the Southern District of Florida by Plaintiffs, alleging infringement of a product similar to StormGear.

50.    SRS Distribution therefore has actively encouraged installers of StormGear to infringe the claims of the '484 Patent, knowing that their installation instructions, when followed, will result in direct infringement.    In turn, installers of SRS Distribution have committed direct infringement of claims 1, 2, and 3 of the '484 Patent.

**COUNT I:  Infringement**
**under 35 U.S.C. § 271(a), (b), and (c)**

51.    Plaintiffs hereby incorporate by reference each of the foregoing allegations as if set forth fully herein.

52.    SRS Distribution has been and currently is using methods that infringe claims 1, 2, and 3 of the '484 Patent, during installations, demonstrations, and training sessions for the StormGear product.

53.    SRS Distribution conducts the methods of claims 1, 2, and 3 of the '484 Patent, in violation of 35 U.S.C. § 271(a).

54.    SRS Distribution has been, and currently is, inducing infringement by providing its customers and other installers or contractors with training and instruction as to how to install StormGear in a manner that infringes claims 1, 2, and 3 of the '484 Patent.  SRS Distribution's conduct is in violation of 35 U.S.C. § 271(b).

55.    SRS Distribution has had knowledge of Stormseal's '484 Patent since at least as early as February of 2023, and has nonetheless continued to actively encourage direct infringement of the '484 Patent through the use of methods that it knows infringe the '484 Patent.

56.    Direct infringement of the '484 Patent has occurred as a result of SRS Distribution's inducement.

57.    Additionally, SRS Distribution has been, and currently is, contributing to

infringement by selling the StormGear heat shrinkable film to customers in the United States. The film is a crucial component in the methods of claims 1, 2, and 3 of the '484 Patent, is especially made or adapted for use in an infringement of the '484 Patent, and is not a staple article or commodity of commerce suitable for substantial non-infringing use. SRS Distributiont's conduct is therefore in violation of 35 U.S.C. § 271(c).

58. SRS Distribution also sells StormGear film together with batten strips (which it sometimes calls "furring strips") for use in installing the film, infringing the claims of the '484 Patent.

59. Plaintiffs will suffer irreparable harm from SRS Distribution's ongoing infringement unless the Court issues an injunction against SRS Distribution, its agents, employees, and all persons acting in concert with them enjoining further use of and instruction in methods that infringe the '484 Patent.

60. Specifically, the market for Stormseal's temporary roofing system heavily depends on the storm season. SRS Distribution's continued infringement is likely to undermine Stormseal's ability to promote its product with contractors and homeowners following a storm. That loss of market share may be difficult to quantify and, therefore, irreparable. Also, SRS Distribution is one of the largest roofing suppliers in the country. Its large footprint and ability to provide space and resources for training in the use of infringing installation methods mean that SRS Distribution's continued infringement is likely to cause irreparable harm to Stormseal by significantly undermining its market position and harming Stormseal's ability to recruit installers for certification.

61. SRS Distribution's infringement is and has been willful and done with full knowledge of Stormseal's patent rights, and as a result, Plaintiffs are entitled to treble damages

under 35 U.S.C. § 284.

62.     This is an exceptional case within the meaning of 35 U.S.C. § 285, and an award of appropriate attorney's fees is justified.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request judgment in their favor and against Defendant, finding Defendant liable for infringement of the '484 Patent and awarding the following relief:

A.      An award of Plaintiffs' damages under 35 U.S.C. § 284, including increased damages up to three times the amount awarded.

B.      An award of Plaintiffs' reasonable attorney's fees under 38 U.S.C. § 285.

C.      An award of Plaintiffs' costs.

D.      An injunction under 35 U.S.C. § 283 barring further use or inducement to use methods that infringe the '484 Patent, and such other relief as is required to prevent the further infringement of the '484 Patent.

E.      Such other relief as the Court deems just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

In accordance with Federal Rule of Civil Procedure 38, Plaintiffs hereby respectfully demand a trial by jury on all issues so triable.

*/s/Ryan S. Loveless*
Ryan S. Loveless
Loveless Law Group
4760 Preston Road | No. 244-357
Frisco, TX 75034
ryan@lovelesslawgroup.com
972-292-8303

**ATTORNEY FOR PLAINTIFFS**