IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| SYSTEM STORMSEAL PTY LTD., and STORMSEAL USA, LLC, | § | |
| | § | |
| | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | CASE NO.  2:23-CV-00391-JRG |
| | § | |
| SRS DISTRIBUTION, INC., | § | |
| | § | |
| | § | |
| *Defendant*. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant SRS Distribution Inc.'s ("Defendant") Opposed Motion to Stay (the "Motion"). (Dkt. No. 12.) In the Motion, Defendant requests the Court to stay the case pending resolution of an action filed by Plaintiffs Stormseal USA LLC and System Stormseal PTY LTD. (collectively, "Plaintiffs" and collectively with Defendant, the "Parties") in the Southern District of Florida. (*Id.* at 1.) For the following reasons, the Court finds that the Motion should be **GRANTED**.[1]

I.    **BACKGROUND**

A.  **The Florida Action**

On November 4, 2022, Plaintiffs filed a complaint alleging that ABC Supply Co., Inc., Mule-Hide Products Co., Inc., and Structural Wrap, LLC ("Structural Wrap") infringe U.S. Patent No. 11,168,484 (the "Asserted Patent"). *Stormseal USA, LLC v. ABC Supply Co.*, No. 9:22-cv-81726-AHS, Dkt. No. 1 ¶¶ 1, 67–100 (S.D. Fla. Nov. 4, 2022) (the "Florida Action"). The Asserted Patent is allegedly "directed to a method for installing [Plaintiffs'] innovative temporary roofing

---

[1] The Court denies Defendant's request for a hearing. (Dkt. No. 14 at 1.)

system." *Id*. ¶ 32. Plaintiffs accused Structural Wrap of directly and indirectly infringing claims 1–3 of the Asserted Patent by installing, and instructing others on how to install, its "WrapRoof" system. *Id.*, ¶¶ 36–56, 67–77. For example, claim 1 recites:

> A method of providing covers over at least a portion of a roof of a storm damaged built structure comprising the steps of:
>
>> applying a sheet of heat shrinkable film over the portion of the roof, the sheet having a leading edge and a trailing edge and being a film of low density polyethylene including shrinking resins;
>>
>> wrapping portions of the leading edge around a first batten and attaching the first batten to an underside of a first eave or to a facia of the built structure;
>>
>> wrapping portions of the trailing edge around a second batten and attaching the second batten to an underside of a second eave or to the facia of the built structure at a location different than the first batten; and
>>
>> heating the sheet of heat shrinkable film to bring the film into conformity with the portion of the roof, wherein said heating step shrinks the sheet of film tight against the built structure to cover over the portion of the roof.

*Id*. ¶ 33; *id.*, Dkt. No. 1-1 at 10:11–27.

The Florida Action is set for trial beginning on September 23, 2024. *Id.*, Dkt. No. 63 at 1.

**B.  The Texas Action**

Approximately 10 months after filing the Florida Action, on August 29, 2023, Plaintiffs filed the complaint in this case, similarly alleging that Defendant infringes claims 1–3 of the Asserted Patent. (Dkt. No. 1 ¶¶ 1, 28–62.) According to Plaintiffs, Defendant sells and installs a temporary roof system (the "Accused System")[2] that directly competes with Plaintiffs' temporary roofing system. (Dkt. No. 1 ¶¶ 30–31.) Further, Plaintiffs allege that Defendant (1) directly infringes claims 1–3 of the Asserted Patent by installing the Accused System for customers, and

---

[2] The Parties inconsistently refer to the Accused System as "StormGear" and "Roof Shield" throughout the briefing.

(2) indirectly infringes claims 1–3 of the Asserted Patent by instructing others on how to install the Accused System. (*Id*. ¶¶ 32–47, 50–58.)

The *Markman* Hearing is currently scheduled for January 17, 2025, the Pretrial Conference is currently scheduled for June 2, 2025, and trial is currently set to begin on July 7, 2025. (Dkt. No. 20.)

### C.  The Motion

Defendant filed this Motion to stay on March 7, 2024. (Dkt. No. 12.) In the Motion, Defendant argues that "[t]he same patent, claims, and infringement theories are asserted across the Florida Action and this Action. Here, [Defendant] merely resold the accused product according to instructions and specifications provided to it by Structural Wrap," which is one of the defendants in the Florida Action, as discussed above. (*Id*. at 1.) Defendant explains that WrapRoof—the system accused of infringement in the Florida Action—and the Accused System here "*are the same product*." (*Id*. at 2 (emphasis original).) To support this contention, Defendant attached to the Motion a "Private Label Agreement" between it and Structural Wrap (Dkt. No. 12-1)[3] and an employee declaration (Dkt. No. 12-2).

Moreover, Defendant states that Structural Wrap provided Defendant with "installation videos, phone and physical support, installation instructions, and contact resources for [Defendant] and its customers." (Dkt. No. 12 at 1; Dkt. No. 12-2 ¶¶ 5–10.) Defendant further states that (1) it purchased the "StormGear product from Structural Wrap *one* time on January 3, 2022," (2) it removed access to the installation videos referenced in the Complaint after Plaintiffs filed this suit, and (3) the sales of the Accused System "to date have amounted to approximately $500,000 USD."

---

[3] While the "Private Label Agreement" is not counter-signed by Defendant (*see* Dkt. No. 12-1 at 6), the Court accepts Defendant's representation that this version contains the terms of the executed agreement between Defendant and Structural Wrap. (Dkt. No. 12 at 2; Dkt. No. 14 at 3.)

(Dkt. No. 12 at 2, 7–8 (emphasis original); Dkt. No. 12-2 ¶¶ 4, 6–7, 11.) Finally, Defendant "agrees to be bound by the outcome in the" Florida Action. (*Id*. at 4.)

On March 21, 2024, Plaintiffs filed a Response Opposing Defendant's Motion to Stay (the "Response"). (Dkt. No. 13.) Notably, Plaintiffs do not genuinely dispute that WrapRoof and the Accused System are the same and that Structural Wrap provides the Accused System to Defendant. Moreover, Plaintiffs do not dispute that Structural Wrap provided the same—or substantially the same—installation instructions to its customers and Defendant. Plaintiffs simply argue that the cases do not involve the same product because Defendant "trademarked and marketed its own product" of a different name, and Plaintiffs further speculate that Defendant could have provided alternative instructions to its customers. (*Id*. at 8.)

On March 28, 2024, Defendant filed Defendant's Reply to Plaintiffs' Response Opposing Defendant's Motion to Stay (the "Reply"). (Dkt. No. 14.) On April 4, 2024, Plaintiffs filed Plaintiffs' Sur-Reply Opposing Defendant's Motion to Stay (the "Sur-Reply"). (Dkt. No. 15.) The Court has considered these briefs as well.

## II.   LEGAL STANDARD

The district court has the inherent power to control its own docket, including the power to stay proceedings. *Clinton v. Jones*, 520 U.S. 681, 706 (1997). How to best manage the Court's docket "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936). However, "[t]he Fifth Circuit adheres to the general rule that the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed." *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997); *see also Lodsys, LLC v. Brother Int'l Corp.*, No. 2:11-cv-00090, 2013 WL 1338767, at *11 (E.D. Tex. Jan. 14, 2013).

4

"District courts typically consider three factors when determining whether to grant a stay[]: (1) whether the stay will unduly prejudice the nonmoving party, (2) whether the proceedings before the court have reached an advanced stage, including whether discovery is complete and a trial date has been set, and (3) whether the stay will likely result in simplifying the case before the court." *NFC Techs. LLC v. HTC Am., Inc.*, No. 2:13–CV–1058–WCB, 2015 WL 1069111, at \*2 (E.D. Tex. Mar. 11, 2015) (Bryson, J.). "Based on th[ese] factors, courts determine whether the benefits of a stay outweigh the inherent costs of postponing resolution of the litigation." *Id.*

## III.    DISCUSSION

### A.    Prejudice

In the Motion, Defendant argues that Plaintiffs will not be unduly prejudiced "at least because the major issues relevant to this Action will be addressed in the Florida Action." (Dkt. No. 12 at 4.) Defendant argues it merely resells the Accused System and "agrees to be bound" by the outcome of the Florida Action with respect to infringement and invalidity. (*Id.* at 3–4). Additionally, "a stay will allow for full access to relevant discovery" from the Florida Action. (*Id.* at 4–5.) Finally, a stay pending resolution of the Florida Action will not unduly prejudice Plaintiffs here because "the Florida Action is set for trial in approximately six months." (*Id.* at 5.)

In the Response, Plaintiffs argue that they will be unduly prejudiced. (Dkt. No. 13 at 3–8.) First, Plaintiffs argue that they would be unduly prejudiced because they directly compete with Defendant. (*Id.* at 3.) According to Plaintiffs, Defendant advertises the Accused System and makes its installation instructions widely available. (*Id.* at 3–4.) Second, Plaintiffs argue that Defendant is not a "mere reseller" because the Asserted Patent recites method claims and Defendant's "infringement depends on [Defendant's] own actions, not the mere act of purchasing and reselling a product distributed by Structural Wrap." (*Id.* at 4.) Third, Plaintiffs argue that Structural Wrap

5

may not be the only supplier of the Accused System. (*Id.* at 5.) Fourth, Plaintiffs argue that Defendant's "promise to be bound by the outcome in the Florida Action is hollow" because resolving Structural Wrap's infringement of method claims cannot resolve *Defendant's* infringement. (*Id.* at 5–6.) Finally, Plaintiffs argue that the Florida Action will not resolve damages in this case. (*Id.* at 6–8.)

In the Reply, Defendant argues that it is not a direct competitor with Plaintiffs because (1) Defendant made a one-time purchase of the Accused System from Structural Wrap, (2) Defendant's sales total only about $500,000, and (3) Defendant has ceased marketing efforts "over the last few months." (Dkt. No. 14 at 1–2.) Defendant further argues that Plaintiffs do not dispute "that Structural Wrap is the sole source" of the Accused System, and thus the Florida Action will provide discovery "relating to sales of the product involved in the accused method." (*Id.* at 3.) Additionally, Defendant affirms that all installation "instructions, including videos, are solely attributable to Structural Wrap." (*Id.*) Defendant further states that it "had *no* input on making the videos when it came to the product and the installation of the product. The installation videos were made, edited, and supplied to [Defendant] by Structural Wrap, and it required that [Defendant] make such videos available." (*Id.* at 4 (emphasis original, citations omitted).)

In the Sur-Reply, Plaintiffs argue that several companies that Defendant acquired "still advertis[e the Accused System] as of April 4, 2024."[4] (Dkt. No. 15 at 2.) Plaintiffs further argue that Defendant has not guaranteed that it will cease marketing the Accused System, despite Defendant's recent removal of marketing materials. (*Id.*) Finally, Plaintiffs argue that Defendant's volume of sales is irrelevant. (*Id.* at 2–3.)

---

[4] SRS Distribution, Inc. is the only named defendant in this case.

The Court finds that this factor weighs slightly in favor of granting a stay. As an initial matter, the Court finds that Defendant sufficiently shows that the Accused System is the same as Structural Wrap's WrapRoof system. Defendant's unrebutted evidence shows that it entered an agreement with Structural Wrap to provide the Accused System. (Dkt. No. 12-1 at 1, 7–8; Dkt. No. 12-2 ¶¶ 4–6.) Defendant's unrebutted evidence also shows that Structural Wrap was the sole provider of the Accused System's installation instructions, including the instructional videos. (*Id.* ¶¶ 7–10.) Plaintiffs merely speculate that Defendant may receive the Accused System from someone other than Structural Wrap.[5] Further, Plaintiffs argument that the Accused System "is manufactured by Balcan, not Structural Wrap" (Dkt. No. 13 at 5) is irrelevant because the evidence shows that Defendant receives the Accused System from only Structural Wrap, no matter the ultimate manufacturer.

Second, the Court finds that the Accused System does not directly compete with Plaintiffs' systems. As Defendant explains, it has taken significant steps toward removing the Accused System from the marketplace. Defendant has removed references to the Accused System from its website and has removed installation instruction videos. Plaintiffs do not dispute that each time they have raised new concerns about the availability of the Accused System and its installation instructions, Defendant has taken measures to remove such content from its webpages. While Plaintiffs complain that companies purportedly acquired by Defendant continue to advertise the Accused System, (1) none of these companies are named defendants, (2) several of the "advertisements" are over a year old and predate this lawsuit, and (3) Defendant's installation instruction videos and an embedded hyperlink to a "training video library" no longer appear to be

---

[5] The "Private Label Agreement" between Defendant and Structural Wrap states that Structural Wrap "will be the sole source of the Products. It will be a breach of said Agreement for Customer to source the same Products from other manufactures or to manufacture the same Products in-house." (Dkt. No. 12-1 at 2.)

functional in the exhibits cited by Defendant. (Dkt. Nos. 15-3–15-8.) Moreover, Plaintiffs have not provided any evidence undermining Defendant's declarant's statement that Defendant "offered [the Accused System] at a greatly reduce [sic] price to *clear remaining inventory*." (Dkt. No. 14-1 ¶ 3 (emphasis added).) The evidence of record tends to show that Defendant is winding down operations with respect to the Accused System. Accordingly, under these specific facts, the Court finds that the Accused System does not now—if it ever—directly compete with Plaintiffs.

Third, the Court finds that Plaintiffs' discovery from the Florida Action likely will not be highly relevant to this case, but that is only because Defendant agrees to be bound by the infringement and validity determinations in the Florida Action. Indeed, in view of that agreement, any discovery on infringement and validity in this case will likely be moot. This would leave discovery on only one major issue[6] in this case: damages.[7] However, this discovery would likely be limited to (1) instances when Defendant itself directly infringes by installing the Accused System, and (2) sales of the Accused System. All that would remain (if infringement is found) is the extent of Defendant's infringement. Thus, while the Florida Action's discovery may not be highly relevant to the issues in this case, that is only because of Defendant's agreement to be bound.[8]

Accordingly, the Court finds, under these specific facts, that Plaintiffs will not be unduly prejudiced by a stay.

---

[6] Discovery may also be warranted for certain other minor issues, such as Plaintiffs' claim that this is "an exceptional case within the meaning of 35 U.S.C. § 285." (Dkt. No. 1 ¶ 62.)

[7] The Parties dispute whether the Florida Action will resolve the damages issues in this case. On this record, the Court is not convinced that the Florida Action will resolve damages under the "one recovery rule," as argued by Defendant. (Dkt. No. 12 at 5–8; Dkt. No. 14 at 4–5.) However, at this point, the Court need not resolve whether—and to what extent—damages may be appropriate in this case.

[8] Plaintiffs' arguments that (1) infringement will not be resolved by the Florida Action, and (2) Defendant's agreement to be bound by the infringement determination in the Florida Action is "hollow," are discussed herein. *Infra*, § III.C.

### B.  Stage of the Proceedings

The Parties agree that the "case is in its early stages." (Dkt. No. 13 at 10; *see also* Dkt. No. 12 at 8–9.) Accordingly, the Court finds that this factor weighs in favor of granting a stay.

### C.  Simplification

In the Motion, Defendant argues that "resolving infringement, validity, and damages issues in the Florida Action will resolve all similar issues in this Action." (Dkt. No. 12 at 5.) According to Defendant, a finding of non-infringement or invalidity in the Florida Action would be dispositive in this case. (*Id*. at 5.) On the other hand, if Plaintiffs "prevail[] against Structural Wrap and collect[] damages in the Florida Action, [they] will have exhausted [their] remedies and be precluded from collecting damages for duplicative downstream infringement by Structural Wrap's customers, including [Defendant]." (*Id*. at 6.)

In the Response, Plaintiffs reiterate their arguments that the Florida Action will only resolve validity of the Asserted Patent. (Dkt. No. 13 at 8.) Plaintiffs further dispute whether damages would be resolved in the Florida Action. (*Id*. at 8–10.)

In the Reply, Defendant argues that "Structural Wrap is the source of all instances of alleged infringement." (Dkt. No. 14 at 4.) With respect to damages, Defendant argues that under the "one recovery rule," an infringement determination in the Florida Action will limit Plaintiffs' recovery to only Structural Wrap. (*Id*.) According to Defendant, Plaintiffs "cannot obtain a second recovery from [Defendant] for resales" of WrapRoof "merely rebranded as" the Accused System. (*Id*.) Defendant further argues that the infringement determination in the Florida Action would resolve indirect infringement allegations because Defendant "did not materially alter" installation instructions provided by Structural Wrap before giving them to customers. (*Id*. at 4–5.) With respect to direct infringement, Defendant argues that Plaintiffs have only speculated about

potentially infringing uses that do not rely upon the installation instructions provided by Structural Wrap. (*Id*. at 5.)

In the Sur-Reply, Plaintiffs reiterate that the Florida Action will not resolve infringement. (Dkt. No. 15 at 3–4.) Plaintiffs contend that Structural Wrap is not "the sole source" of the Accused System. (*Id*. at 3.) Plaintiffs further argue that its infringement contentions are not limited to the instructional videos and that Defendant performed the steps of the asserted claims, thereby directly infringing the Asserted Patent, which cannot be resolved in the Florida Action. (*Id*.) Plaintiffs further argue that the Florida Action will not resolve damages because Plaintiffs "may be able to recover lost profits 'attributable to each of a series of infringers.'" (*Id*. at 4.)

The Court finds that this factor weighs in favor of granting a stay. Defendant has agreed to be bound by infringement and validity determinations in the Florida Action. (Dkt. No. 12 at 3 (Defendant "agrees to be bound by the outcome of the Florida Action. This ensures that final resolution of the Florida Action will resolve issues of infringement and validity of the '484 Patent in this Action."); Dkt. No. 14 at 3.) Plaintiffs agree that the Florida Action will resolve validity. (Dkt. No. 13 at 8 (Plaintiffs stating that the Florida Action "will, at most, resolve validity").) Based upon Defendant's agreement to be bound by the Florida Action's determination on validity, the Court agrees that a stay would simplify this issue.[9]

The Parties dispute whether infringement will be resolved by the Florida Action. The Court finds that infringement will likely be resolved by the Florida Action. Defendant states that it "did not materially alter the instructions" for installation provided by Structural Wrap, and it argues

---

[9] Defendant argues that validity of the Asserted Patent may also be resolved by a petition for *inter partes* review ("IPR") challenging all claims. (Dkt. No. 12 at 8; Dkt. No. 14 at 3.) However, the Patent Trial and Appeal Board ("PTAB") has not yet issued an Institution Decision, and, if instituted, a Final Written Decision on patentability would not be due until May 2025. Defendant's argument in view of the IPR petition is irrelevant given this Court's "consistent practice of denying motions to stay when the PTAB has yet to institute post-grant proceedings." *Force MOS Tech., Co. v. ASUSTek Computer, Inc.*, No. 2:22-cv-00460-JRG, 2024 WL 1586266, at *4 (E.D. Tex. Apr. 11, 2024).

that Defendant's infringement theories in this case and the Florida Action are identical. (Dkt. No. 14 at 5; Dkt. No. 12 at 5.) Plaintiffs do not genuinely dispute that Defendant's installation instructions are substantially identical to Structural Wrap's installation instructions. Accordingly, if the court in the Florida Action finds that Structural Wrap indirectly infringes the Asserted Patent through the distribution of WrapRoof and its installation instructions, then this would effectively be a determination that Defendant infringes, given Defendant's (1) representation that Structural Wrap is the "sole supplier" of the Accused System (Dkt. No. 12 at 1); (2) representation that its installation instructions are provided by, and substantially the same as, Structural Wrap's; and (3) agreement to be bound by an infringement determination in the Florida Action. Therefore, the Court finds that resolution of infringement in the Florida Action will also simplify infringement in this case.[10] The Court notes that the Florida Action will not resolve Plaintiffs' allegations that Defendant has directly infringed the Asserted Patent by installing the Accused System, but the Florida Action will also simplify this issue, given the likelihood that (1) Defendant installed the Accused System only a limited number of times,[11] and (2) Defendant followed Structural Wrap's installation instructions whenever it installed the Accused System.[12]

Importantly, because the Florida Action is much closer to trial than this case, "the major issues of infringement and validity will be adjudicated without delay." *Lighthouse Consulting Group, LLC v. Truist Bank*, No. 2:19-cv-00340-JRG, 2020 WL 6781977, at *2 (E.D. Tex. Apr. 7,

---

[10] The Court disregards Plaintiffs' speculation that Defendant may install the Accused System in a manner other than that provided in the installation instructions, or that Defendant may provide alternative installation instructions to customers. Plaintiffs have presented no evidence to substantiate these claims.
[11] The Court notes that Defendant seems to dispute whether it has ever installed the Accused System, given that its declarant states that "[a]ll installation techniques, whether video *or onsite*, was a direct result of Structural Wrap's direction and *always conducted by Structural Wrap*." (Dkt. No. 12-2 ¶ 10.)
[12] As previously discussed, *supra* n.7, the Court is not convinced, on this record, that the Florida Action will resolve the issue of damages in this case.

2020). Accordingly, the Court finds, under these specific facts, that a stay will likely simplify this case.

IV.    **CONCLUSION**

For the reasons stated above, the Court finds that the Motion (Dkt. No. 12) should be and hereby is **GRANTED**. Accordingly, all claims and counterclaims between Plaintiffs and Defendant in the above-styled action are hereby **STAYED** pending resolution of the Florida Action as it relates to Plaintiffs and Structural Wrap. The Parties are directed to submit a joint status report not later than fourteen (14) days from the resolution of *Stormseal USA, LLC v. ABC Supply Co., et al*, No. 9:22-cv-81726-AHS (S.D. Fla.) as to Structural Wrap. After consideration of same, the Court may lift or maintain the stay, as the interests of justice require.

**So ORDERED and SIGNED this 6th day of May, 2024.**

RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE